1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANDREW VASQUEZ,                        No.  2:19-cv-01283 TLN AC

12                 Plaintiff,

13        v.                                ORDER AND

14   EILYA MOGHADDAM, et al.,               FINDINGS & RECOMMENDATIONS

15                 Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court are defendants' motion for partial summary judgment,[1]

19   which has been fully briefed by the parties.  ECF Nos. 57, 62, 66.[2]  Plaintiff has filed a cross-

20   motion for summary judgment (ECF No. 62) and a request for a settlement conference (ECF No.

21   64).  For the reasons explained in further detail below, the undersigned recommends that

22   defendants' motion for summary judgment be granted, and that plaintiff's cross-motion be

23   summarily denied as moot.  The request for a settlement conference will be denied without

24   prejudice.

---

[1]  Defendants do not seek summary judgment on the improper transport and reckless driving
claim against defendant Wheeler.  ECF No. 57-1 at 18 n. 1.  For this reason, the court refers to
defendants' motion as one for partial summary judgment.
[2]  The court has also read and considered plaintiff's sur-reply docketed on August 10, 2023.  It
contains two additional statements of undisputed fact that were not in plaintiff's original
opposition.  See ECF No. 67 at 6.

1

I.      Procedural History and Overview

This case is proceeding on plaintiff's first amended complaint, filed on July 27, 2021. ECF No. 14.  On screening, the undersigned found that plaintiff had stated cognizable claims against four defendants.  See ECF No. 15.  Plaintiff elected to voluntarily dismiss all other claims and defendants, ECF No. 16, and the case accordingly proceeded on the claims identified in the screening order as appropriate for service, ECF No. 17.  Those claims are as follows.

Claim One alleges that defendant Dr. Moghaddam was deliberately indifferent to plaintiff's serious medical needs related to an abdominal hernia.  This claim was narrowed on screening to matters related to Dr. Moghaddam's acts and omissions in (1) failing to diagnose plaintiff's hernia; (2) failing to refer plaintiff in a timely fashion for hernia repair surgery; (3) ignoring plaintiff's complaints of pain before and after surgery; (4) failing to adequately treat post-surgical pain; and (5) refusing to authorize crutches or a cane after plaintiff was injured in a fall.  ECF No. 15 at 5.

Claim Three alleges that defendant Officer Wheeler was deliberately indifferent to plaintiff's safety and medical needs when he (1) transported plaintiff improperly; (2) drove recklessly in manner that caused pain and injury; and (3) refused to allow plaintiff to use mobility devices authorized by medical personnel after his hernia surgery.  ECF No. 15 at 5.

Claim Four is brought against defendant Officer Perez for deliberate indifference to plaintiff's safety and serious medical needs when he refused to allow plaintiff to use a wheelchair after his surgery.  Id.

Lastly, Claim Five alleges deliberate indifference against defendant Sergeant Mallot for ordering medical staff to discontinue first aid treatment after plaintiff fell.  Id.

////

////

////

////

2

1      II.      Plaintiff's Allegations[3]

2              A.      Background Facts

3      The events at issue in the first amended complaint occurred while plaintiff was an inmate

4   at California State Prison-Sacramento.  ECF No. 14 at 1.  Beginning in April 2017, plaintiff

5   began to experience intermittent sharp abdominal pain along with the development of a lump.

6   ECF No. 14 at 9.  Over the next several months, a bulge developed just above plaintiff's navel

7   that was accompanied by sudden jolts of pain, abdominal tenderness, constipation, and an

8   inability to sleep.  ECF No. 14 at 10.  By January 2018, the hernia pain progressed to a 10 out of

9   10 with the mass protruding from plaintiff's abdomen visible to the naked eye.  Id. at 11.

10             B.      Pre-Surgical Conduct of Dr. Moghaddam

11     Plaintiff alleges that he informed his primary care physician, defendant Moghaddam, of

12  his increased abdominal pain on May 1, 2017; the doctor provided only Tylenol.  ECF No. 14 at

13  10.  On January 9, 2018, plaintiff informed Dr. Moghaddam of "debilitating lower back pain

14  aggravated by sever[e] hernia pain," but the doctor refused to refer plaintiff for hernia repair

15  surgery.  ECF No. 14 at 11.  On April 6, 2018, plaintiff informed Dr. Moghaddam that he was

16  experiencing shortness of breath and increased jolts of severe pain causing plaintiff to be

17  concerned about falling on the uneven terrain or on the stairs.  ECF No. 14 at 13.  The next day,

18  plaintiff injured his ankle after experiencing a sudden jolt of pain while walking in the prison

19  yard.  Id. at 13-14.

20             C.      Conduct of Officer Wheeler

21     On June 21, 2018, defendant Wheeler transported plaintiff to and from San Joaquin

22  General Hospital for hernia repair surgery.  ECF No. 14 at 15.[4]  Upon plaintiff's return to CSP-

23  Sac, he complained of feeling faint in the Triage Treatment Area.  ECF No. 14 at 18.  A nurse

24  went to get plaintiff a wheelchair to use, but Officer Wheeler told her "no" because it would delay

25  _____

26  [3]  Plaintiff signed his first amended complaint under penalty of perjury.  As a result, it is
   considered as an affidavit for summary judgment purposes to the extent it is based on personal
27  knowledge and sets forth specific facts admissible in evidence.  See Lopez v. Smith, 203 F.3d
   1122, 1132 n. 14 (9th Cir. 2000).

28  [4]  The allegations related to defendant Wheeler's improper transport and reckless driving of
   plaintiff are not material to the pending summary judgment motion and are therefore omitted.

3

1    him.  ECF No. 14 at 18.  After Wheeler left plaintiff in the C-Yard with two other correctional

2    officers, plaintiff located an empty wheelchair and was pushed to his housing unit.  Id.

3         D.    Conduct of Officer Perez

4         Once plaintiff arrived back in his housing unit after his hernia surgery on June 21, 2018,

5    defendant Perez forced plaintiff to walk up the stairs to get to his cell while he was still in pain

6    and in shackles.  ECF No. 14 at 18, 26.  Officer Perez denied plaintiff the use of a wheelchair

7    ramp to reach his cell.  Id.  Plaintiff stumbled on the stairs and "almost" fell, causing pain and

8    also causing plaintiff to urinate on himself.  Id. at 18.

9         E.    Conduct of Sergeant Mallot

10        On June 22, 2018, while walking to get his pain medications, plaintiff fell backwards

11   down the stairs causing severe head, neck, and back trauma.  ECF No. 14 at 18-19.  After a

12   medical staff member began putting a neck brace on plaintiff, Sgt. Mallot ordered her to stop.

13   ECF No. 14 at 26.  Officer Mallot's threatening posture and orders to stop caused medical staff to

14   leave.  Id. at 27.  This delayed the assessment and treatment of plaintiff's injuries.  Id.  Plaintiff

15   specifically complains that he did not receive an MRI or CT scan after being transported to the

16   Triage Treatment Area of the prison.  Id. at 19.

17        F.    Post-Surgical Conduct of Dr. Moghaddam

18        Plaintiff generally challenges Dr. Moghaddam's failure to order the aftercare instructions

19   that were provided to plaintiff by San Joaquin General Hospital.  Specifically, plaintiff contends

20   that Dr. Moghaddam knew that plaintiff would have to walk down stairs to get his medication,

21   and he did not order that plaintiff be housed in the infirmary or receive his medications at his cell

22   door to prevent his risk of fall.  ECF No. 14 at 18, 22.  Plaintiff also asserts that Dr. Moghaddam

23   failed to adequately treat his post-surgical pain, and discontinued his pain medication without

24   addressing his need for it in light of his fall on June 22, 2018.  Id. at 19.

25   ////

26   ////

27   ////

28   ////

4

1      III.      Motion for Summary Judgment

2                A.      Defendants' Arguments

3         In their motion,[5] defendants contend that they are entitled to summary judgment because

4    the undisputed material facts demonstrate that: (1) defendant Moghaddam properly and timely

5    diagnosed a hernia, referred plaintiff for surgery, and provided proper follow-up medical care; (2)

6    defendants Wheeler and Perez did not ignore a known risk to plaintiff's safety since there was no

7    doctor's order for a wheelchair; (3) defendant Mallot acted reasonably by deferring treatment

8    decisions to medical staff as indicated in his first-aid training; and (4) plaintiff did not suffer any

9    injury as a result of defendant Mallot's actions.  In addition, defendants assert that summary

10   judgment is appropriate because they are all entitled to qualified immunity.

11               B.      Plaintiff's Response

12        With respect to defendants' argument that the delay in plaintiff's hernia surgery does not

13   rise to the level of an Eighth Amendment violation, plaintiff submits that he told medical staff

14   that be believed he had a hernia beginning in April 2017, and not April 2018.  ECF No. 62 at 8.

15   According to plaintiff, "numerous other staff diagnosed the hernia and all documented plaintiff

16   was in extreme pain" between January 8 and April 4, 2018.  ECF No. 62 at 9.  In the 16 months

17   that he waited for surgery, plaintiff contends that defendant Moghaddam denied him effective

18   pain management treatment.  ECF No. 62 at 8.  Plaintiff argues that defendant Moghaddam

19   violated CDCR's pain management policy, and ignored the surgeon's directive that plaintiff not

20   climb stairs or engage in activities that could cause him to fall after his hernia surgery.  ECF No.

21   62 at 2.  Regarding the claim against defendant Mallot, plaintiff contends that this defendant

22   intimidated medical staff from providing appropriate treatment.  ECF No. 62 at 12.

23        Instead of admitting or denying each of defendants' statements of undisputed facts

24   attached to their summary judgment motion, plaintiff created a separate statement of undisputed

25   _____

26   [5]  Defendants served plaintiff with notice of the requirements for opposing their motion pursuant
     to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 57-8; see Klingele v. Eikenberry,
27   849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the
     requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en
28   banc) (movant may provide notice.)

1    facts in opposition to the motion.  See ECF No. 62 at 2-5.  Even though not in proper format, the

2    court has considered all of plaintiff's evidence tendered in opposition to summary judgment

3    which includes portions of his CDCR medical records, his medical grievances, and a signed

4    declaration from inmate Rudy Simental who was plaintiff's cellmate during the timeframe at

5    issue in this case.  See id. at 18-125.

6            C.      Defendants' Reply

7        By way of reply, defendants point out that there is only one medical defendant in this

8    case, Dr. Moghaddam.  ECF No. 66 at 2.  Concerning the delay in treatment for his hernia,

9    plaintiff was regularly treated by nurses in 2017 and the beginning of 2018 when he complained

10   of hernia pain.  Id.  These nurses are not a party to this action.  Dr. Moghaddam first saw plaintiff

11   for hernia pain on April 4, 2018, and referred him for a surgical consult on April 25, 2018.  Id.

12   "To the extent that [p]laintiff wanted more pain medication, he has alleged a difference of opinion

13   regarding medical treatment, which is not deliberate indifference."  Id. at 2-3.  For these reasons,

14   defendant Moghaddam requests summary judgment.

15       The remaining defendants are custody officers who were not responsible for plaintiff's

16   medical treatment.  According to defendants, "[i]t is undisputed that medical instructions to use a

17   wheelchair or avoid climbing stairs were never communicated to Officers Wheeler and Perez and

18   they were never aware of any such instructions."  Id. at 2.  Defendants note that plaintiff's

19   surgical discharge instructions did not prohibit his use of stairs and only requested that plaintiff be

20   moved "to the ground level, so he does not have to overt-exert [sic] or increase intraabdonimal

21   pressure."  Id. at 3.

22       According to defendant Mallot, plaintiff does not address the reason why he told staff to

23   stop rendering aid to plaintiff after his fall: "there was a risk of a head or neck injury and so he

24   instructed everyone to wait for medical staff."  Id. at 4.  Since medical staff were responsible for

25   determining what further treatment plaintiff needed once they arrived, defendant Mallot should be

26   granted summary judgment.  Id. at 4.

27       Additionally, since plaintiff did not respond to defendant's qualified immunity argument,

28   summary judgment should be granted on this ground.  Id. at 5.

                                            6

1      D.      Plaintiff's Sur Reply

2          After defendants submitted their reply brief, plaintiff filed a "corrected" version of his

3  opposition to summary judgment.  ECF No. 67.  Even though sur replies are not permitted by the

4  Local Rules, the court has read and considered the brief and will not strike it from the docket.

5  See Local Rule 230(m).

6      IV.     Governing Legal Principles

7          A.      Standards for Summary Judgment

8          Summary judgment is appropriate when the moving party "shows that there is no genuine

9  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

10  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

11  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

12  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

13  moving party may accomplish this by "citing to particular parts of materials in the record,

14  including depositions, documents, electronically stored information, affidavits or declarations,

15  stipulations (including those made for purposes of the motion only), admissions, interrogatory

16  answers, or other materials" or by showing that such materials "do not establish the absence or

17  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

18  support the fact."  Fed. R. Civ. P. 56(c)(1).

19          "Where the non-moving party bears the burden of proof at trial, the moving party need

20  only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

21  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

22  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

23  motion, against a party who fails to make a showing sufficient to establish the existence of an

24  element essential to that party's case, and on which that party will bear the burden of proof at

25  trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

26  of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

27  a circumstance, summary judgment should "be granted so long as whatever is before the district

28  ////

7

1   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

2   56(c), is satisfied." Id.

3          If the moving party meets its initial responsibility, the burden then shifts to the opposing

4   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

5   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

6   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

7   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

8   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

9   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

10   fact "that might affect the outcome of the suit under the governing law," and that the dispute is

11   genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

12   party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

13          In the endeavor to establish the existence of a factual dispute, the opposing party need not

14   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

15   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16   trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

17   (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

18   "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

19   whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

20   quotation marks omitted).

21          "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

22   court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

23   v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

24   opposing party's obligation to produce a factual predicate from which the inference may be

25   drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

26   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

27   some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

28   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

### B.   Eighth Amendment Deliberate Indifference Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

### V.   Undisputed Material Facts[6]

### A.   Material Background Facts

The events at issue occurred while plaintiff was an inmate at CSP-Sac from April 1, 2017 through June 22, 2018.  Defendants' Statement of Undisputed Facts ("DSUF") at No. 1.  During this time period, Dr. Moghaddam was employed by the California Department of Corrections and

---

[6]  Unless otherwise noted, these facts are undisputed by the parties or are deemed undisputed by the court upon review of the record evidence.

Rehabilitation ("CDCR") as a Physician and Surgeon.  DSUF at No. 2.  Defendants Wheeler and Perez were Correctional Officers and defendant Mallot was a Correctional Sergeant at CSP-Sac.  DSUF at No. 2.

Plaintiff's medical treatment was recorded in his prison medical records while at CSP-Sac.  DSUF at No. 3.

On January 8, 2018, plaintiff reported a possible hernia in his abdomen that was causing him pain on a health care services request form (7362).  ECF No. 57-9 at 3.  He was examined by a registered nurse on the same day who diagnosed him with chronic lower back pain due to a prior car accident.  DSUF at No. 4-5; ECF No. 57-9 at 58 (Assessment Forms).

On February 21, 2018, plaintiff was examined again by a registered nurse who identified a "very small hernia on palpation" after plaintiff complained of a constant stabbing pain on a 9 out of 10 on the pain scale.  DSUF at 6; ECF No. 57-9 at 51-54.  Plaintiff complained to the nurse that his hernia was getting bigger over time and that he would have to push it back in when it bulged out.  ECF No. 62 at 24 (Plaintiff's Bate Stamped Record in Opposition to Summary Judgment).  According to the nurse, plaintiff appeared comfortable with no sign of pain noted.  ECF No. 57-9 at 54.  The nurse instructed plaintiff to avoid constipation and to notify medical staff if he was having any acute abdominal pain.  DSUF at No. 7.

Plaintiff submitted another health care services request form on March 22, 2018, based on complaints of hernia pain and requested to see a doctor in order to get surgery to fix it.  ECF No. 57-9 at 2.  He was examined by a nurse on March 24, 2018, in response to this request.  DSUF at No. 8.  At the time of examination, plaintiff reported upper abdominal pain that was an 8 out of 10 on the pain scale.  ECF No. 57-9 at 45.  The nurse diagnosed plaintiff with a hernia above the belly button and referred him for a follow-up appointment with his primary care physician within 14 days.  DSUF at No. 9.

////

////

////

////

10

1    B.    Pre-Surgical Treatment by Dr. Moghaddam

2    Defendant Moghaddam examined plaintiff in response to his complaints of abdominal

3    pain and the nursing referral on April 4, 2018.[7]  DSUF at No. 10.  By way of previous medical

4    history, plaintiff indicated that he had an abdominal mesh placement following a gunshot wound

5    and that he felt there was a bulge in the mesh and that this hernia was coming back.  DSUF at No.

6    11.

7    There was no visible hernia and even on examination, Dr. Moghaddam could not palpate

8    any hernia.  DSUF at No. 12.  When plaintiff coughed hard and increased the abdominal pressure,

9    Dr. Moghaddam found there might be some minimal bulge.  DSUF at No. 13.  Based on this

10   examination and his professional judgment, Dr. Moghaddam did not believe that surgical

11   intervention was indicated.  DSUF at No. 14.  Instead, he believed plaintiff was experiencing

12   constipation and he prescribed Docusate and increased fluids for plaintiff.  DSUF at No. 15.

13   On April 25, 2018, Dr. Moghaddam again examined plaintiff in response to his

14   complaints of severe abdominal pain and a left ankle injury sustained after a fall on April 7, 2018.

15   DSUF at No. 16; ECF No. 57-9 at 39.  Plaintiff reported continued upper abdominal pain and a

16   bulge that episodically came out.  DSUF at No. 17.  He reported that in the past he would have no

17   bulge, but that in the last few months it was almost daily and that the symptoms would get better

18   after laying down.  DSUF at No. 18.

19   After examining plaintiff, defendant Moghaddam noted that plaintiff had a ping-pong size

20   ventral hernia which could be reproduced with a cough, but it went back in easily.  DSUF at No.

21   19.  This was the first time that plaintiff presented with a hernia during the examination.  DSUF at

22   No. 20.  Because the hernia was easily reducible, Dr. Moghaddam concluded that it did not

23   present any immediate danger to plaintiff and did not require urgent treatment.  ECF No. 57-4 at

24   No. 6 (Declaration of E. Moghaddam).

25   On the same day as this examination, Dr. Moghaddam referred plaintiff for a surgical

26   ───────────────

27   [7]  Plaintiff disputes that this was the first time that he was seen by defendant Moghaddam.  The
     evidence submitted by plaintiff indicates that defendant Moghaddam provided plaintiff with
     diagnostic test results on February 29, 2016, which were unrelated to his hernia.  ECF No. 62 at
28   122.  The dispute established by this evidence is  accordingly immaterial.

1  evaluation of his hernia.  Dr. Moghaddam's standard advice to patients with a reducible hernia

2  without complications is to avoid heavy lifting and to monitor their condition for worsening

3  symptoms.  ECF No. 57-4 at No. 6.

4      On May 4, 2018, Dr. Moghaddam next saw plaintiff as a result of a health care grievance,

5  or 602 appeal, that plaintiff filed based on conflicting information he was receiving from medical

6  staff as well as a request for treatment for his hernia.  DSUF at No. 24.  In response to the

7  grievance, Dr. Moghaddam told plaintiff that he did not have any control over the information

8  that plaintiff received from other health care staff, that plaintiff was already approved for a

9  surgical evaluation of his hernia, and that his abdominal binder had been offered and was

10  pending.  DSUF at No. 25.

11      According to Dr. Moghaddam, the standard of care for the treatment of a hernia is to

12  determine if it is the type that requires immediate treatment.  ECF No. 57-4 at 4, ¶ 17.  It is not

13  uncommon for a hernia to appear one day and not the next.[8]  DSUF at No. 76.  If the hernia

14  cannot be easily reduced and the blood supply to the intestine is cut off, then emergency treatment

15  would be required.[9]  ECF No. 57-4 at 4, ¶ 17.  In plaintiff's case, his hernia was easily reducible

16  and was not an emergency.  Id.  In this situation, the solution would not always be surgical, but

17  Dr. Moghaddam referred plaintiff for a surgical evaluation nonetheless.  DSUF at No. 72, 78.  As

18  a result, the decision to perform surgery was not made by Dr. Moghaddam.  DSUF at No. 78.  Dr.

19  Moghaddam declares that any delay in hernia repair surgery would not cause additional injury to

20  the patient under these circumstances because the hernia could continue to be treated with non-

21  surgical options, such as an abdominal binder, until the surgery was conducted.  ECF No. 57-4 at

22  4, ¶ 20.

23      The surgical consult that was ordered by Dr. Moghaddam occurred on June 8, 2018, at

24  San Joaquin General Hospital surgery clinic.  DSUF at No. 26.  Plaintiff was scheduled for a

25  

26  [8]  Even plaintiff's cell mate acknowledges that he observed part of plaintiff's intestine bulging out of his skin "at times."  ECF No. 62 at 117, ¶ 4.

27  [9]  A hernia may be "reduced" by manually pushing it back into the abdomen.  See ECF No. 57-4

28  at 4, ¶ 18 (explaining that a hernia is a portion of the intestine that protrudes through a weak spot in a layer of the abdominal wall).

1    ventral hernia repair surgery on June 21, 2018.  DSUF at No. 26.

2         While waiting for surgery, plaintiff was seen again by Dr. Moghaddam on June 18, 2024.

3    DSUF at No. 27.  Plaintiff reported that he was using the abdominal binder without any issues

4    and that he did not have any new complaints.  DSUF at No. 29.  According to the physical exam

5    notes, plaintiff appeared well.  ECF No. 57-9 at 37.

6         C.    Officer Wheeler

7         On June 21, 2018, plaintiff underwent surgery to repair his hernia at San Joaquin General

8    Hospital.  DSUF No. 30.  Defendant Wheeler was one of the assigned transport officers

9    responsible for taking plaintiff to and from the hospital.  DSUF at No. 31.  During the transport,

10   plaintiff was handcuffed with a belly chain and was seat belted into a transport van.  DSUF at No.

11   32; Plaintiff's Deposition at 48:15-18.

12        According to Officer Wheeler, he was not aware of any doctor's orders to provide plaintiff

13   with a urinal, special handcuffs, or a wheelchair.  ECF No. 57-5 at 2, ¶ 8 (Wheeler Declaration).

14        Officer Wheeler drove the van back to the prison following plaintiff's surgery.  DSUF at

15   No. 34.  Plaintiff alleges that he was injured during this return trip from the hospital and that his

16   injuries were documented in the nurse's examination notes when he arrived back at CSP-Sac.

17   DSUF at No. 37-38.[10]

18        At CSP-Sac, Officer Wheeler escorted plaintiff from the transport vehicle to the Triage

19   Treatment Area (TTA) so that plaintiff could be checked in by medical staff.  ECF No. 57-5 at 2,

20   ¶ 9. According to Officer Wheeler, plaintiff was able to walk from the van to the TTA.  ECF No.

21   57-5 at 2, ¶ 10.

22        The medical record from the nursing examination of plaintiff at 8:45 p.m. on June 21,

23   2018, indicates that plaintiff had abdominal tenderness, but was ambulatory with a full range of

24   motion following his surgery.  DSUF at No. 39.  Plaintiff was prescribed Tylenol with Codeine

25   # 3 for pain by a Physician and Surgeon who is not a party to this action.  ECF No. 62 at 73.

26   _____

[10]  As previously noted, defendants have not moved for summary judgment on the portion of
27   Claim Three that alleges Officer Wheeler drove with deliberate indifference to plaintiff's safety
     and is responsible for these injuries and for the pain that plaintiff experienced as a result of the
28   transportation.

Plaintiff was released to custody officers at 8:57 to return to his housing unit, but he was not given a wheelchair.  DSUF at Nos. 41, 43.

The hospital discharge instructions did not specifically direct that plaintiff be provided a wheelchair.  DSUF at No. 42.  However, the aftercare instructions requested that plaintiff be moved "to the ground level so he does not have to overt-exert [sic] or increase intraabdominal pressure."  ECF No. 57-9 at 12.  The aftercare instructions following general anesthesia included the instruction that plaintiff not participate in activities where he "could fall or become injured" for at least 24 hours after surgery.  ECF No. 57-9 at 19.  According to the declaration from plaintiff's cell mate, Rudy Simental, plaintiff was discharged from the hospital with an alert bracelet that said he was a "fall risk."  ECF No. 62 at 119, ¶ 11.

        D.      Officer Perez

Regarding the allegation that defendant Perez refused to push plaintiff up the ramp to his cell after his surgery on June 21, 2018, Perez does not recall any of the events from that day. DSUF at No. 47.

        E.      Sergeant Mallot

On June 22, 2018, the morning after his surgery, plaintiff slipped and fell during the morning medication pass in his unit.  DSUF at No. 48.  Defendant Mallot was one of the custody staff officers who responded.  DSUF at No. 49.  Although he does not recall the specific incident on this date, Sgt. Mallot has been trained to not provide any assistance in situations involving a risk of neck or back injury until medical staff arrive.  DSUF at No. 52.  The parties agree that there was a delay of no more than two minutes until medical staff arrived and placed plaintiff on a gurney to take him to the Triage Treatment Area.  DSUF at No. 51; Plaintiff's Depo. at 73:25-74:3.

Plaintiff was examined by a nurse at 8:44 a.m. after his report that he fell because he was dizzy and lightheaded.  DSUF at No. 55.  Plaintiff was already wearing a cervical collar at the time of the exam.  DSUF at No. 57.  The nursing assessment indicated that plaintiff experienced "episodic syncope" and he was instructed to (1) "take small step[s] and get up slowly to gradually adjust to walking after surgery;" (2) take his Tylenol 3 pain medication at the onset of any pain;

14

1    and (3) to "[w]alk as tolerated." ECF No. 57-9 at 33 (Progress Notes). On examination, the

2    nurse found that plaintiff's dressing on his surgical site was intact, with clean borders and "no

3    severe blood saturation or significant blood stain." DSUF at No. 56; ECF No. 57-9 at 33.

4                    a.   Post-Surgical Treatment by Dr. Moghaddam

5           Dr. Moghaddam conducted a follow-up examination of plaintiff on June 26, 2018, five

6    days after his hernia repair surgery. DSUF at No. 61. Plaintiff reported that his pain medication

7    was wearing off too fast and requested an increase in his medication. ECF No. 62 at 86 (Progress

8    Notes). Upon examination, Dr. Moghaddam noted that the surgical staples were still in place,

9    that plaintiff was stable, and he appeared to be healing well. DSUF at Nos. 62-63. Dr.

10   Moghaddam continued plaintiff's prescription for Tylenol #3 for pain management, but he denied

11   plaintiff's request for a cane or walker because he observed that plaintiff was able to get up and

12   down from a chair and the exam table without any assistance. DSUF at No. 64.

13          According to Dr. Moghaddam, "the standard of care following ventral hernia repair

14   surgery… would be to release the patient home with no restriction on walking or climbing stairs.

15   ECF No. 57-4 at 4, ¶ 21. He additionally opined that a "reasonably healthy patient" would not

16   need a wheelchair following this type of surgery and that the staples used to close the surgical site

17   "would not be stretched by walking or climbing stairs." ECF No. 57-4 at 3-4, ¶¶ 16, 21. Based

18   on the surgery that plaintiff received, Dr. Moghaddam opined that plaintiff would not need to be

19   placed in special handcuffs that did not run across his waist. ECF No. 57-4 at 3, ¶ 15. Plaintiff

20   disputes this and indicates that the waist chain caused him unnecessary pain during his transport.

21                F.   Discussion

22          Based on the evidence presented in support of summary judgment, defendants have met

23   their initial burden of demonstrating the absence of a genuine issue of material dispute regarding

24   deliberate indifference. Accordingly, the burden shifts to plaintiff to demonstrate that a genuine

25   issue of material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

26   U.S. 574, 586-87 (1986). Drawing all reasonable inferences from plaintiff's evidence in his favor

27   as the non-moving party, the court makes the following findings with respect to each defendant.

28

a.  <u>Defendant Dr. Moghaddam</u>

The undisputed medical evidence in this case demonstrates that plaintiff was treated by non-party medical providers for his complaints of hernia pain prior to April 2018.  Therefore, the delay in diagnosing and referring plaintiff for surgery prior to this time period cannot be attributable to Dr. Moghaddam.  Additionally, plaintiff does not provide any evidence to show that Dr. Moghaddam's delay in recommending surgery from April 4, 2018 (when he first saw plaintiff) to April 25 (when he could actually feel plaintiff's hernia for the first time) was medically unacceptable.  Defendant Moghaddam referred plaintiff for a surgical consult on the same day that he first observed the hernia.  There is no evidence to support an inference that Dr. Moghaddam subjectively understood that this three-week delay would create an excessive risk of harm to plaintiff.  See <u>Farmer</u>, 511 U.S. at 837.  Although plaintiff presents evidence that his hernia was observable to the naked eye at various times, the undisputed evidence establishes that the bulge was episodic and was not present during the April 4 appointment with Dr. Moghaddam.  Plaintiff has identified no admissible evidence to dispute Dr. Moghaddam's testimony that an abdominal hernia which can be easily reduced, in a patient with no symptoms indicating a cutoff of blood flow to the intestines, does not present a medical emergency.  Plaintiff's personal disagreement with the doctor about when a surgical consult was appropriate cannot create a triable issue.  See <u>Toguchi</u>, 391 F.3d at 1058.  For all these reasons, Dr. Moghaddam is entitled to summary judgment on the issues of failing to earlier diagnose plaintiff's hernia and refer him for hernia repair surgery.

Turning to Dr. Moghaddam's post-surgical care, plaintiff has not tendered admissible evidence of deliberate indifference in the failure to order an infirmary placement or in-cell medication distribution to avoid a fall.  Defendant has presented evidence that the standard of care following a ventral hernia repair did not include restrictions on walking or climbing stairs.  ECF No. 57-4 at 4, ¶ 21.  Plaintiff relies in part on the fact that Dr. Moghaddam knew that plaintiff had previously fallen on April 7, 2018, due to abdominal pain related to the hernia, and therefore argues that he should have been treated as a fall risk after surgery.  There is no evidence, however, that a repeat of the April incident was likely following surgical repair.

16

1   Moreover, any inconsistencies between the hospital's discharge recommendations and Dr.

2   Moghaddam's orders (or failure to order certain accommodations) cannot support a finding of

3   deliberate indifference unless defendant's actions were "medically unacceptable under the

4   circumstances." Toguchi, 391 F.3d at 1058.  There is no such evidence here.  And there is no

5   evidence that Dr, Moghaddam acted with the subjective knowledge that his failure to order

6   infirmary placement or in-cell medication distribution created a serious risk that plaintiff would

7   fall and injure himself.  See id.  Accordingly, there is no triable issue as to deliberate indifference.

8          The same is true of plaintiff's June 26, 2018, request for a cane or walker.  Plaintiff has

9   not presented any evidence that he had a serious medical need for such a device at that point in

10  time.  The discharge instructions from SJGH indicated only that plaintiff should not participate in

11  any activities with a risk of falling for 24 hours after surgery.  Nor does the hospital's request for

12  a ground floor cell indicate a specific duration.  In any event, any differences between SJGH

13  instructions and Dr. Moghaddam's actions is insufficient to support a finding of deliberate

14  indifference as a matter of law.

15         With respect to pain management both prior to and after surgery, plaintiff's evidence

16  amounts to a difference of opinion that cannot support an inference of deliberate indifference.

17  Toguchi, 391 F.3d at 1058.  Although plaintiff indicates that the prescribed pain medication was

18  not strong enough, he does not present any evidence demonstrating that Dr. Moghaddam's

19  prescription was outside the medical standard of care.[11]  For these reasons, Dr. Moghaddam is

20  entitled to summary judgment based on his treatment of plaintiff's hernia pain both before and

21  after surgery.

22         In sum, plaintiff has failed to present evidence sufficient to support an essential element of

23  his claim against Dr. Moghaddam—that the doctor acted with a deliberately indifferent state of

24  mind.  Accordingly, defendant is entitled to summary judgment on Claim One.

25                          b.  Officer Wheeler

26         The only issue on which defendant Wheeler seeks summary judgment is the denial of a

27  _____

28  [11]  To the extent plaintiff argues that Dr. Moghaddam did not follow CDCR's Pain Management
    Protocol, this does not rise to the level of an Eighth Amendment violation.

mobility device for plaintiff immediately after his hernia surgery when Wheeler transported him back to CSP-Sac and then from the Triage Treatment Area to C-Yard.[12]  The hospital discharge instructions did not include the use of a wheelchair.  On return to the prison, Wheeler observed plaintiff walking from the van to the TTA.  There plaintiff was assessed by the nurse as "ambulatory."  Even crediting plaintiff's testimony that Wheeler heard him tell the TTA staff that he felt faint, that is not enough to support an inference that Wheeler subjectively knew plaintiff was unable to walk at that point and required a wheelchair for his safety.  Taking the evidence in the light most favorable to plaintiff, there was a possible conflict between the nurse's assessment that plaintiff was ambulatory (an assessment which, according to Dr. Moghaddam, was consistent with the standard of care) and the "fall risk" bracelet that plaintiff was wearing.[13]  Even so, a custodial officer's deference to a nurse's judgment under these circumstances cannot be considered deliberately indifferent.

Officer Wheeler's knowledge that plaintiff wanted a wheelchair, or even evidence that he knew it hurt plaintiff to walk, is insufficient to support a conclusion that he ignored a known risk to plaintiff's safety.  Indeed, the uncontroverted evidence is that neither walking nor climbing stairs would be likely to pose a medical risk to someone who had just had a ventral hernia repair.  Defendant Wheeler is entitled to summary judgment on this portion of Claim Three.

### c.  Officer Perez

After Officer Wheeler escorted plaintiff to C-Yard, another officer pushed plaintiff in a wheelchair to the housing unit.  At the housing unit, plaintiff alleges that Officer Perez instructed him to take the stairs up to his cell.[14]  Even crediting plaintiff's account, this does not rise to the level of deliberate indifference.  Plaintiff was in a wheelchair at that point not because it had been ordered by medical staff, but because he and the escorting officer happened to come upon an unoccupied wheelchair along the way and the officer was willing to use it.  DSUF at No. 45.  The

---

[12]  See supra, notes 1 & 11.
[13]  Defendants have not addressed plaintiff's evidence that he was wearing such a bracelet on return from the hospital.
[14]  Plaintiff has produced no evidence as to the number of stairs that he was required to climb, but he testified at his deposition that there was a ramp which could have been used to push him up in the wheelchair.  ECF No. 57-3 at 18.  This suggests that it was not a full flight of stairs.

difference between that officer's graciousness and Officer Perez's conduct does not amount to a constitutional violation.  Because medical staff had determined plaintiff to be ambulatory, treating him as such cannot have been deliberately indifferent.  Even if the court were to assume that medical staff in the TTA were negligent in failing to identify a need for a wheelchair (despite the undisputed medical evidence that patients are generally able to climb stairs after this surgery),[15] negligence is not deliberate indifference—and any such error of medical judgment would not be attributable to Officer Perez.  There is no evidence that could support an inference that he ignored a risk to plaintiff's safety of which he was subjectively aware.  Officer Perez is therefore entitled to summary judgment on Claim Four.

> #### d.  Sergeant Mallot

It is undisputed that as a custody officer, Sgt. Mallot was not responsible for instructing medical staff on what specific treatment to provide inmates—nor was he authorized to do so. While deliberate indifference may appear when "prison officials deny, delay or intentionally interfere with medical treatment," Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988), there is no evidence that Sgt. Mallot delayed medical response to plaintiff's June 22, 2018 fall or interfered with medical treatment.  Plaintiff has not introduced evidence to dispute defendant's showing that Mallot stopped *custodial officers* from taking potentially dangerous actions until medical staff could arrive to ensure the safety of head and neck stabilization.

Moreover, defendants are correct that "[p]laintiff ignores that after that two-minute period, [p]laintiff was seen by medical staff, any of whom could have resumed whatever treatment that they thought was [medically] appropriate."  ECF No. 57-1 at 19.  The undisputed medical evidence establishes that a cervical collar was placed on plaintiff to prevent any further head or neck trauma.  To the extent plaintiff argues that Sgt. Mallot's words and actions created a domino effect of other staff members failing to administer medical treatment, there is no evidence tendered to support this conclusion.  Plaintiff's insistence that he should have received an MRI or X-ray is not a competent medical opinion, and he has identified no evidence that such diagnostic

---

[15]  Even the hospital discharge instructions on which plaintiff relies for other purposes did not prohibit the use of stairs.

tests were indicated or that Sgt. Mallot's actions prevented them from being provided.

Accordingly, Sgt. Mallot is entitled to summary judgment.

### G. Qualified Immunity

Because plaintiff has failed to identify evidence that creates a triable issue of fact as to the deliberately indifferent state of mind of any defendant, it is unnecessary to separately analyze the qualified immunity defense.

### H. Plaintiff's Cross-Motion for Summary Judgment

For the reasons explained above, defendants are entitled to summary judgment on all claims addressed in their motion.  Accordingly, plaintiff's cross-motion (ECF No. 62) should be summarily denied as moot.[16]

### I. Plain Language Summary of this Order for a Pro Se Litigant

Because you are acting as your own attorney in this case, the court wants to make sure that you understand this order.  The following information is meant to explain this order in plain English and is not intended as legal advice.

The magistrate judge has reviewed defendants' motion for summary judgment, as well as the evidence submitted by all the parties, and finds that you do not have enough evidence to go to trial on the claims addressed by the motion.  Even if Dr. Moghaddam or any of the custodial staff defendants could have or should have done things differently, there is not any evidence showing that any of them *knew* their actions created a serious risk to you that they deliberately disregarded. That is what it takes to show an Eighth Amendment violation.  The magistrate judge is therefore recommending that defendants' motion for summary judgment be granted, and that your cross-motion for summary judgment be denied.  That leaves one claim for trial: the part of Claim Three based on Officer Wheeler's alleged deliberate indifference to your safety during the drive back to the prison from the hospital.

You have fourteen days to explain to the court why this is not the correct outcome in your

---

[16]  Defendants correctly note that plaintiff provided no affirmative argument in support of summary judgment in his own favor under Rule 56.  See ECF No. 66 at 1, n. 1. The document styled as an opposition and counter-motion expressly addresses only those issues raised by defendants' motion.  See ECF Nos. 62, 67.

1  case.  If you choose to do this, you should label your explanation as "Objections to Magistrate

2  Judge's Findings and Recommendations."  The district court judge assigned to your case will

3  review any objections that are filed and will make a final decision.

CONCLUSION

5       IT IS HEREBY ORDERED that plaintiff's request for a settlement conference (ECF No.

6  64) is denied without prejudice to renewal following resolution of the pending motions for

7  summary judgment.

8       IT IS FURTHER RECOMMENDED that:

9  1.  Defendants' motion for partial summary judgment (ECF No. 57) be GRANTED;

10 2.  Plaintiff's cross-motion for summary judgment (ECF No. 62) be DENIED as moot;

11     and

12 3.  The case proceed to trial solely on the issue whether defendant Officer Wheeler was

13     deliberately indifferent to plaintiff's safety and medical needs when he transported

14     plaintiff improperly and drove recklessly in a manner that cause pain and injury.

15      These findings and recommendations are submitted to the United States District Judge

16 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

17 after being served with these findings and recommendations, any party may file written

18 objections with the court and serve a copy on all parties.  Such a document should be captioned

19 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

20 objections shall be served and filed within fourteen days after service of the objections.  The

21 parties are advised that failure to file objections within the specified time may waive the right to

22 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23 DATED: July 31, 2024

24

25     ALLISON CLAIRE
       UNITED STATES MAGISTRATE JUDGE

26

27

28